**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

APERION CARE, INC. and )
ACI EQUITIES, LLC, )
)
Petitioners, )
) No. 22 C 3120
v. )
) Judge Sara L. Ellis
SENWELL SENIOR INVESTMENT )
ADVISORS, )
)
Respondent. )

**OPINION AND ORDER**

Respondent Senwell Senior Investment Advisors ("Senwell") instituted an arbitration

proceeding against Petitioners Aperion Care, Inc. and ACI Equities, LLC. (collectively,

"Aperion"), alleging that Aperion had failed to compensate Senwell in accordance with the

parties' agreement. An arbitrator rendered interim and final arbitration awards in Senwell's

favor, prompting Aperion to file this action to vacate the awards pursuant to § 10 of the Federal

Arbitration Act ("FAA"), 9 U.S.C. § 10. Senwell has filed a competing motion to confirm the

arbitration awards pursuant to 9 U.S.C. § 9. Aperion argues that the arbitrator exceeded his

powers and denied Aperion a fair hearing. Because the Court rejects Aperion's arguments, the

Court denies Aperion's petition to vacate the arbitration awards and grants Senwell's motion to

confirm the arbitration awards.

**BACKGROUND**

Aperion owns skilled nursing facilities in Indiana. In an effort to sell seven of these

facilities (the "Covenant Facilities"), Aperion entered into an advisory and consulting services

agreement (the "Agreement") with Senwell on November 7, 2019, with a 180-day term (through

May 5, 2020).  As relevant here, Aperion agreed to pay Senwell a fee if Aperion consummated a

transaction for the Covenant Facilities during the term of the Agreement or "during the 6 months

immediately following termination of this Agreement between [Aperion] and any third party

who was identified or approached by any party during the term of the Agreement."  Doc. 1-1 at

177.  The Agreement included a carveout so that if Hill Valley Healthcare purchased the

Covenant Facilities, Aperion did not have to pay Senwell a fee.  The Agreement also included

the following audit provision:

> Upon Senwell's request, [Aperion] shall make available to
> Senwell, within a timely manner and during normal business
> hours, copies of all documents relevant to the sale, and any
> documents and records related to the negotiation of the sale or a
> potential sale, from a buyer or potential buyer for audit and review.
> If such audit or review reveals that Senwell is entitled to
> compensation, [Aperion] shall pay the compensation and all costs
> associated with the audit.  Otherwise, the costs associated with the
> audit will be borne by Senwell.

*Id.* at 178.  The Agreement provided that it was governed by Indiana law and mandated

arbitration of all disputes arising out of the Agreement, with "the decision of the arbitrators . . .

binding upon the parties, and judgment upon the award rendered [able to] be entered by any

court having jurisdiction thereof."  *Id.* at 181.

During the term of the Agreement, Senwell presented over fourteen interested parties

with non-disclosure agreements and provided Aperion with offers for the Covenant Facilities

from five parties.  But Aperion did not consummate a transaction for the Covenant Facilities

during the term of the Agreement.  Ultimately, on August 26, 2020, Aperion entered into a

purchase agreement with Crown Healthcare Group ("Crown"), which agreed to pay $44 million

for the Covenant Facilities.  The transaction closed on November 1, 2020.  Crown had initially

expressed interest in the Covenant Facilities in 2018, continuing conversations about the

facilities with Aperion through October 2019.  On January 27, 2020, Crown's principal, Fred

Freidman, sought to restart the conversation by sending an email to Yosef Meystel, Aperion's owner, that stated that Crown "want[ed] to put in a serious offer for the [Covenant] portfolio." *Id.* at 350. Meystel responded that day that Aperion "ha[d] an offer for over 43M that [Aperion was] working on." *Id.* After that offer fell through and after the term of the Agreement, in June 2020, Aperion and Crown reengaged negotiations, which led to the November 1, 2020 completed sale.

Once Senwell learned of Aperion's sale of the Covenant Facilities to Crown, it sought to obtain information about the transaction from Aperion to determine the fee, if any, that Aperion owed it. Despite the Agreement's audit provision, Aperion refused to provide the requested information. Senwell then commenced arbitration proceedings before the American Arbitration Association ("AAA") to compel the production and recover the fee it maintained Aperion owed it. Aperion responded with a counterclaim seeking its costs and attorneys' fees for responding to Senwell's audit request. Aperion provided Senwell with the requested transaction documents during the course of the arbitration proceeding.

The parties participated in an arbitration hearing on January 6 and 7, 2022, where they presented both live testimony and documentary evidence. Aperion did not present two witnesses—Crown's in house and external counsel for the Covenant Facilities transaction—who, along with Aperion's transactional counsel, Aperion had only disclosed three weeks before the hearing. In light of the late disclosure, the arbitrator ruled on December 28, 2021 that Aperion could not present evidence from these witnesses unless Senwell had the opportunity to depose them before the hearing. Aperion then presented its transactional counsel for a deposition and as a witness at the hearing. But Aperion did not arrange for Crown's counsel's depositions and so did not present their testimony at the hearing.

The arbitrator issued an interim award and order on February 25, 2022. He concluded that Aperion identified Crown as a result of Freidman's January 27, 2020 email, meaning that the Agreement required Aperion to pay Senwell 2.75% of the value of the transaction plus interest. *Id.* at 550–51. The arbitrator also awarded Senwell its costs, expenses, and attorneys' fees under the audit provision based on Senwell's success in demonstrating that the Crown purchase came within the Agreement's compensation provisions, which Senwell had to pursue through the arbitration. *Id.* at 551–52 (interim award); *Id.* at 555 (March 16, 2022 final award).

## ANALYSIS

Under the FAA, the Court must confirm an arbitration award unless certain statutory exceptions, as set forth in §§ 10 and 11 of the FAA, apply. 9 U.S.C. § 9. The Court addresses whether the exceptions that Aperion raises prevent confirmation in this case.

## I.      Arbitrator Allegedly Exceeding His Powers

Section 10(a)(4) provides that the Court may vacate an arbitration award where the arbitrator "exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). The Court's review is extremely limited, with Aperion bearing a heavy burden. *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 568–69 (2013). The Court may only vacate the award if the arbitrator acted outside the scope of his authority, i.e., if he issued an award that "does not draw its essence from the agreement between the parties." *Yasuda Fire & Marine Ins. Co. of Europe, Ltd. v. Cont'l Cas. Co.*, 37 F.3d 345, 349 (7th Cir. 1994). "It is not enough for petitioners to show that the panel committed an error—or even a serious error." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010); *Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 563 (7th Cir. 2008) ("Factual or legal error, no matter how gross, is

4

insufficient to support overturning an arbitration award."). Instead, the Court only considers whether the arbitrator interpreted the parties' contract, not whether he correctly interpreted the contract. *Oxford Health Plans*, 569 U.S. at 569 ("[T]he sole question for us is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong.").

### A.    Entitlement to Fee for Sale of the Covenant Facilities

Aperion first argues that the arbitrator ignored the Agreement's language in finding that Aperion owed Senwell a fee for the sale of the Covenant Facilities to Crown. *See U.S. Soccer Fed'n, Inc. v. U.S. Nat'l Soccer Team Players Ass'n*, 838 F.3d 826, 832 (7th Cir. 2016) ("Because the arbitrator is typically limited to interpreting the contract, if there is no possible interpretive route to the award, then a noncontractual basis can be inferred and the award set aside." (citation omitted) (internal quotation marks omitted)). After reciting the relevant provision from the Agreement, the arbitrator stated that "what is relevant and outcome determinative is whether **any third party** (Crown) was identified or approached by **any party** (Aperion or Senwell) during the term of the Agreement" and then concluded that because "Aperion identified Crown as a result of the January 27, 2020, e-mail [from Crown's Friedman to Aperion's Meystel], Senwell is entitled to a fee." Doc. 1-1 at 550–51. Aperion argues that the arbitrator added terms to the Agreement to reach this conclusion, specifically that (1) the Agreement entitled Senwell to a commission if the purchaser approached Aperion (as opposed to Aperion or Senwell approaching the purchaser); and (2) the Agreement "does not require that a party be identified at all during the Agreement's term; it only requires that a party be identified during the initial six-month term after expiration and places no other limits on the date of identification." Doc. 1-1 at 550. But Aperion cannot use a motion to vacate as an attempt to

5

reargue the merits of the arbitrator's decision. *See Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) ("Courts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement."); *Gingiss Int'l, Inc. v. Bormet*, 58 F.3d 328, 333 (7th Cir. 1995) ("[T]hinly veiled attempts to obtain appellate review of the arbitrator's decision . . . [are] not permitted under the FAA."); *Baravati v. Josephthal, Lyon & Ross, Inc.*, 28 F.3d 704, 706 (7th Cir. 1994) ("[W]e do not allow the disappointed party to bring his dispute into court by the back door, arguing that he is entitled to appellate review of the arbitrators' decision."). All the Court can consider is whether the arbitrator interpreted the Agreement. *See Hill v. Norfolk & W. Ry. Co.*, 814 F.2d 1192, 1194–95 (7th Cir. 1987) ("[T]he question for decision by a federal court asked to set aside an arbitration award . . . is not whether the arbitrator or arbitrators erred in interpreting the contract; it is not whether they clearly erred in interpreting the contract; it is not whether they grossly erred in interpreting the contract; it is whether they interpreted the contract."). And on this question, the answer is yes: the arbitrator set forth the relevant contractual provision, explained his interpretation of it, and then compared the evidence presented at trial to the provision to conclude that the condition for payment was met. *See* Doc. 1-1 at 550–51. Because the arbitrator did not wholly disregard the terms of the Agreement or otherwise fashion an extra-contractual remedy, he did not exceed his powers by awarding Senwell a fee.

### B. Attorneys' Fees

This does not end the inquiry, however, because Aperion also argues that the arbitrator exceeded his powers by awarding Senwell its attorneys' fees purportedly "pursuant to Paragraph 3 Audit of the Agreement." Doc. 1-1 at 552, 554. Aperion contends that the Agreement did not include a fee- or cost-shifting provision and that the audit provision only contemplated Senwell

bearing the cost of Aperion's response to an audit request if the audit revealed that Senwell was

not entitled to a commission, not that Aperion would pay Senwell its costs in pursuing an audit if

Senwell prevailed.  This again amounts to a mere disagreement with the arbitrator's

interpretation of the audit provision, not to an instance of the arbitrator's failure to interpret the

contract.  *See Johnson Controls, Inc. v. Edman Controls, Inc.*, 712 F.3d 1021, 1025 (7th Cir.

2013) ("We uphold an award so long as an arbitrator is even *arguably* construing or applying the

contract and acting within the scope of this authority.  We will not overturn an award because an

arbitrator committed serious error, or the decision is incorrect or even whacky." (citations

omitted) (internal quotation marks omitted)).

Further, Aperion argues that to the extent the audit provision allows for cost-shifting,

under Indiana law, the term "cost" as used in the audit provision does not include attorneys' fees.

*See City of Charleston Advisory Planning Comm'n v. KBJ, LLC*, 879 N.E.2d 599, 604 (Ind. Ct.

App. 2008) ("It has long been established in this State, however, that the bare term 'costs' does

not encompass attorney fees." (quoting *State v. Holder*, 295 N.E.2d 799, 800 (Ind. 1973))).  But

"§ 10(a)(4) does not make legal errors a ground on which a judge may refuse to enforce an

award."  *Hyatt Franchising, L.L.C. v. Shen Zhen New World I, LLC*, 876 F.3d 900, 902 (7th Cir.

2017)).  Additionally, the fact that both sides requested attorneys' fees during the hearing

undermines any argument that the arbitrator exceeded his powers in awarding them.  *See Astanza*

*Design, LLC v. Giemme Stile, S.p.A.*, 220 F. Supp. 3d 641, 648 (M.D.N.C. 2016) (collecting

cases of parties agreeing to submit attorneys' fees to arbitrators through their conduct, noting that

"Defendants' attempt to walk back their requests for fees as having been made 'perfunctorily'

. . . is, to say the least, unconvincing"); *WMA Secs., Inc. v. Wynn*, 105 F. Supp. 2d 833, 839 (S.D.

Ohio 2000) ("It is manifestly inconsistent to request attorney fees and then to argue, after fees

7

are awarded to the adverse party, that the panel lacked the power to award fees in the first

place."). Therefore, the Court cannot find that Aperion has demonstrated that the arbitrator

exceeded his powers in awarding Senwell its attorneys' fees and costs. *See Boldischar v.*

*Reliastar Life Ins. Co.*, No. 14 C 6844, 2016 WL 3997596, at *5 (N.D. Ill. July 26, 2016)

(rejecting argument that arbitrators exceeded powers and erred in awarding certain damages,

finding that claims of legal or factual mistakes did not provide grounds for overturning an

arbitrator's decision)

## II.     Fundamental Fairness of the Hearing

Finally, Aperion challenges the award pursuant to § 10(a)(3) of the FAA, which allows

the Court to vacate an order "where the arbitrators were guilty of misconduct in refusing to

postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and

material to the controversy; or of any other misbehavior by which the rights of any party have

been prejudiced." 9 U.S.C. § 10(a)(3). To warrant vacatur, "the arbitrators' failure to consider

pertinent evidence must have deprived [Aperion] of a fundamentally fair hearing," which

typically means "wrongly exclud[ing] the sole evidence on a pivotal issue." *Mical v. Glick*, 581

F. App'x 568, 570 (7th Cir. 2014). The arbitrator enjoys wide latitude in conducting the hearing;

he is "not bound to hear all of the evidence tendered by the parties" although he "must give each

of the parties to the dispute an adequate opportunity to present its evidence and arguments."

*Generica Ltd. v. Pharm. Basics, Inc.*, 125 F.3d 1123, 1129–30 (7th Cir. 1997) (quoting *Hoteles*

*Condado Beach, La Concha & Convention Ctr. v. Union De Tronquistas Local 901*, 763 F.2d

34, 40 (1st Cir. 1985)).

Aperion argues that the arbitrator deprived it of a fundamentally fair hearing by

excluding third party witnesses who Senwell had not had an opportunity to depose. Aperion

8

maintains that these witnesses—Crown's in house and external counsel who worked on the

purchase of the Covenant Facilities from Aperion—"would have provided relevant, and

unbiased, testimony regarding the timing of negotiations between Aperion and Crown." Doc. 1

at 21. Initially, the arbitrator did not exclude the witnesses wholesale, instead requiring Aperion

to make them available for a deposition prior to giving testimony at the hearing. Whether for

timing or other reasons, Aperion chose not to comply with this ruling for the two Crown

witnesses but did make its transactional counsel available for a deposition in compliance with the

arbitrator's order. "On procedural and evidentiary matters, federal courts defer to arbitrators'

decisions so long as those decisions are reasonable." *Bartlit Beck v. Okada*, 25 F.4th 519, 522

(7th Cir. 2022). The arbitrator acted reasonably in attempting to balance Aperion's desire to

have the witnesses testify against the potential prejudice to Senwell given the late disclosure.

Moreover, Aperion has not sufficiently explained how the exclusion of these witnesses deprived

it of a fundamentally fair hearing. The arbitrator did not "exclude[ ] the sole evidence on a

pivotal issue," instead hearing testimony from several other witnesses on the timing of the

Crown transaction and considering documentary evidence on the issue as well. *See Mical*, 581

F. App'x at 570. Thus, the Court cannot conclude that the arbitrator's decision precluded

Aperion from receiving a fundamentally fair hearing so as to require vacatur under § 10(a)(3).

*See Nosbaum v. J.P. Morgan Sec. LLC*, No. 17 C 6202, 2018 WL 3626112, at *7 (N.D. Ill. July

30, 2018) ("[A]lthough the arbitrators made an evidentiary ruling that limited the consideration

of evidence of Nosbaum's Bank line of credit, they still received significant evidence and

argument regarding the line of credit and on Nosbaum's claim of overall unsuitability, as

detailed above. Thus, the record amply demonstrates that the arbitrators did not 'refus[e] to hear

evidence pertinent and material to the controversy,' as described in § 10(a)(3), and the Court will

not vacate the Award on this ground.").

## CONCLUSION

For the foregoing reasons, the Court denies Aperion's motion to vacate the arbitration

award [1] and grants Senwell's motion for order confirming arbitration award [16].

Dated: February 6, 2023

                                                   

_____
SARA L. ELLIS
United States District Judge